IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CECELIA RITTER**                                                                                           **PLAINTIFF**

V.                              No. 4:24-cv-00676-KGB-ERE

**MICHELLE KING,**                                                                                      **DEFENDANT**
**Acting Commisioner of**
**Social Security Administration**

### RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to Chief United States District Judge Kristine G. Baker. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and be filed within fourteen days. If you do not object, you risk waving the right to appeal questions of fact, and Chief Judge Baker can adopt this RD without independently reviewing the record.

**I.     Introduction**

On August 9, 2021, Ms. Cecelia Ritter applied for Title II social security disability widow's benefits and Title XIV supplemental security income benefits. *Tr. 31, 124-128*. In both applications, she stated she was disabled due to anxiety, depression, back problems, hip problems, COPD, migraines, personality disorder, learning disability, bone disease, and claustrophobia. *Tr. 128*. Ms. Ritter alleged disability beginning on May 26, 2019. *Tr. 31*.

The Social Security Administration ("SSA") denied Ms. Ritter's applications at the initial and reconsideration levels of review. *Tr. 85-174*. After conducting a hearing, an administrative law judge ("ALJ") found that Ms. Ritter was not disabled.[1] *Tr. 31-43*.

On June 5, 2024, the Appeals Council denied Ms. Ritter's request for review, making the ALJ's denial of benefits the Commissioner's final decision. *Tr. 14-19*. Ms. Ritter has requested judicial review.

For the reasons stated below, I recommend affirming the Commissioner's decision.

## II. The ALJ's Decision[2]

Ms. Ritter was fifty-four years old on the alleged onset date of May 26, 2019, meaning she was in the "closely approaching advanced age category."[3] *Tr. 42, 85*.

---

[1] In the ALJ's written decision, she found no good cause to reopen and revise an October 2020 denial of disability benefits by the SSA. *Tr. 31*.

[2] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[3] When the Social Security Administration decides whether a claimant is disabled under 20 C.F.R. § 404.1520(g)(1), it will consider the claimant's chronological age in combination with her residual functional capacity, education, and work experience.

To begin, the ALJ made certain required findings related to Ms. Ritter's widow's claim. She found that Ms. Ritter was the unmarried widow of the deceased insured worker at the time of the ALJ's decision, and she had attained age 50.[4] *Tr. 34*. The ALJ found that the relevant time-period for the determination of benefits ended on October 31, 2024. *Id*

Next, the ALJ determined that Ms. Ritter had not engaged in substantial gainful activity since May 26, 2019, the alleged onset date. *Id*. At step two, the ALJ determined that Ms. Ritter has the following severe impairments: posttraumatic stress disorder ("PTSD"), depression, and anxiety. *Id*. However, the ALJ concluded that Ms. Ritter did not have an impairment of combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Pt 404, Subpt P, App'x 1 (Listings). *Tr. 35-36*.

The ALJ then determined that Ms. Ritter had the residual functional capacity ("RFC") to perform work at all exertional levels, with the following non-exertional limitations: (1) capable of simple, routine, repetitive tasks; (2) can maintain attention, concentration, and pace for two-hour increments with normal breaks; (3) would do best in a low-stress work environment, defined as only occasional decision making or workplace changes. *Tr. 36*.

---

[4] Therefore, Ms. Ritter met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act. *Tr. 34*.

At step four, after obtaining testimony from a Vocational Expert ("VE"), the ALJ found that Ms. Ritter is capable of performing past relevant work as a cleaner. *Tr. 41*. The ALJ made an alternate finding at step five: relying on the VE's testimony and considering Ms. Ritter's age, education, work experience, and RFC, she found that jobs existed in significant numbers in the national economy that Ms. Ritter could perform, such as hand packager, inspector, hand packer, and checker/weigher. *Tr. 42*. Therefore, the ALJ found that Ms. Ritter was not disabled during the relevant time-period (from May 26, 2019, through October 31, 2023, the date of the ALJ's decision). *Tr. 42-43*.

## III. DISCUSSION

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however,

>merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.     Ms. Ritter's Arguments for Reversal

Ms. Ritter's sole argument is that the ALJ did not properly consider or discuss her alleged low intellectual functioning (Intellectual Disorder). Specifically, she claims that: (1) the ALJ should have found low intellectual functioning to be a severe impairment at step two; (2) Ms. Ritter met Listing 12.05 (Intellectual Disorder) at step three; and (3) the ALJ erred in evaluating a consultative examiner's medical opinion, with respect to low intellectual functioning.

### 1.   Step Two Evaluation of Severe Impairments

Ms. Ritter alleges that the ALJ should have found her intellectual disorder to be a severe impairment at step two. Step two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). A "severe" impairment significantly limits a claimant's ability to perform basic work activities; the claimant has the burden of proving that an impairment is severe. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

At the initial and reconsideration stages of review by the SSA, medical and intake experts attempted to obtain evidence from Ms. Ritter. *Tr. at 120-139*. There were issues with Ms. Ritter: (1) not complying; (2) not responding to multiple phone calls or voicemails; (3) delaying intake interviews; and not returning required disability forms for many months. *Id*. Even when the intake specialists gave notice that Ms. Ritter had ten days to comply, she did not follow through.[5] *Id.*

As a result of her noncompliance, the medical experts at the initial and reconsideration levels found that there was insufficient evidence to determine if she had any severe mental impairments, an including intellectual disorder. *Id*. Therefore, these experts did not assess any RFC limitations. The ALJ discussed this and,

---

[5] The SSA provides streamlined processes for a claimant to provide evidence throughout the levels of review. The intake specialists can only do so much if a claimant does not cooperate.

considering the record as a whole (including other medical opinions), still assigned an RFC for simple, routine work in a low-stress environment. *Tr. 36*. However, Ms. Ritter claims that her alleged intellectual disorder, depression, anxiety, and PTSD prevent her from performing even simple work.

Ms. Ritter saw LCSW[6] Dionetta Mallory several times in 2021. The counseling records do show that Ms. Ritter experienced periods of decreased mental functioning due to anxiety and PTSD, but Ms. Mallory noted generally normal mental status exams at most appointments. *Tr. 763-790*. She routinely observed that Ms. Ritter had full affect, clear speech, and logical thought process. *Id*.

Ms. Mallory also noted that, with treatment, Ms. Ritter was improving in her ability to manage stress and PTSD. *Tr. 778-782*. Also, Ms. Ritter's problems were often situational in nature, such as her husband's death in 2020, difficulty with her roommates, and the stress of caring for her aging mother. *Tr. 772-790*. Situational stressors, on their own, do not trigger entitlement to disability benefits. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Merrell v. Berryhill*, No.: 3:17-cv-00213-PSH, 2018 WL 1916606, at *2 (E.D. Ark. April 23, 2018) (In affirming the denial of benefits, the Court noted that "there appears to have been a situational component to Merrell's anxiety.")

---

[6] License Clinical Social Worker.

7

Importantly, Ms. Ritter improved when she took psychotropic medication as prescribed by her treating doctors. *Tr. 40, 565, 681, 871, 875, 919, 1039, 1211.* Conservative self-care practices also helped Ms. Ritter. *Tr. 775-790.* Additionally, Ms. Ritter worked with the same impairments before her alleged onset date, but the medical records do not show that her impairments have gotten worse over time. In fact, Ms. Ritter left her last job to care for her sick husband, rather than due to any particular medical condition. *Tr. 1758.* See *Weber v. Barnhart*, 38 F.3d 723, 724 (8th Cir. 2003) (discrediting a claimant's allegation of disabling impairments when evidence showed she stopped working for reasons other than her impairment).

Additionally, Ms. Ritter admitted that she could perform a variety of daily activities, such as household chores, taking care of pets, and assisting with care for her mother. *Tr. 35-40, 61, 572, 578, 761, 1759.* She enjoyed reading for pleasure, and she denied cognitive limitations in her ability to shop, count change, perform self-care, and live independently (although at one point during the relevant time-period she was living in her car). *Id.*

When consultative examiner Barrie Roer, Psy.D, conducted intelligence testing on June 4, 2023, he found that Ms. Ritter scored in the low or extremely low percentage on multiple parts of the test. *Tr. 1757-1766.* Her Full-Scale IQ was 51, which put Ms. Ritter in the extremely low range. *Tr. 1760.* Dr. Roer opined that Ms. Ritter would have moderate or marked problems with some daily work activities. *Tr.*

8

*1764-1765*. However, he contradicted himself by writing that Ms. Ritter was independent with daily activities and could read, watch TV, and make change. *Tr. 1759*. Also, Dr. Roer observed that Ms. Ritter had normal speech; congruent affect; and adequate attention, concentration, fund of knowledge, and memory. *Id*. Her insight was good, and her thought process was linear. *Id*. Even though Ms. Ritter appeared anxious, she interacted cooperatively with Dr. Roer. *Id*. Dr. Roer's report, cited by Ms. Ritter as a conclusive finding in favor of an award of benefits, does not show that low intellectual functioning significantly affected her ability to perform basic work activities.[7] Noting these inconsistencies, the ALJ found Dr. Roer's opinion unpersuasive. *Tr. 41*. I find no error at step two.

### 2. Listing 12.05

Part and parcel of Ms. Ritter's overarching argument is her assertion that she met Listing 12.05 (Intellectual Disorder). At step three, the burden rests squarely on the claimant to prove she met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). The claimant must show that her impairment matches all of the specified medical criteria of a Listing. *Johnston v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). An ALJ's failure to address a specific Listing or to elaborate on his conclusion

---

[7] Once the ALJ proceeds past step two, the labeling of an impairment as severe or non-severe has no legal significance; the medical record as whole is the basis for the determinations at steps three and four. *See* 20 C.F.R. §§ 404.1545(e), 416.945(e); Social Security Ruling 96-8p, 1996 WL 374184 (the ALJ will consider all medically determinable impairments, even those that are non-severe, when assessing residual functional capacity).

9

that a claimant's impairments do not meet a Listing is not reversible error if the record supports the conclusion. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006); *Igo v. Colvin*, 839 F.3d 724, 730 (8th Cir. 2016).

Listing 12.05 (Intellectual Disorder) has two parts, either of which the claimant may meet to prove she met that listing.[8] 12.05(A) requires: (1) significantly subaverage general intellectual functioning: <u>and</u> (2) significant deficits in adaptive function evidenced by dependence on others for personal needs; <u>and</u> (3) evidence that the intellectual disorder began before age 22. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05. In the alternative, a claimant may meet 12.05(B) by demonstrating: (1) a full scale IQ score of 70 or below, or a full scale IQ score of 71-75 with a verbal or performance IQ score of 70 or below; <u>and</u> (2) significant deficits in adaptive functioning manifested by extreme limitation of one, or marked limitation of two, of the following areas: (a) understanding, remembering, and applying information, (b) interacting with others, (c) concentrating, persisting, or maintaining pace, or (d) adapting and managing oneself; <u>and</u> (3) evidence that the intellectual disorder began before age 22. *Id*.

Again, multiple treatment providers reported mostly normal mental status examinations. Contrary to Ms. Ritter's argument that the ALJ cherry-picked

---

[8] https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_05

evidence from normal examinations, there are dozens of instances in Ms. Ritter's providers' notes of good insight, logical and linear thought processes, adequate attention and concentration, normal speech, intact memory, and good communication skills. *Tr. 763-790, 864, 904, 1064, 1095, 1155, 1171, 1708, 1773.* As the ALJ discussed, anxiety, and PTSD occasionally caused real problems for Ms. Ritter. The ALJ accounted for any credible mental limitations by assigning Ms. Ritter an RFC for basic, routine work in a low-stress environment with normal breaks. *Tr. 36.*

Ms. Ritter seems to argue that a low IQ score of 51 means she meets a Listing. While the IQ score of 51 is very low, the balance of the subjective and objective evidence does not indicate that Ms. Ritter met or equaled Listing 12.05. As the Commissioner stated, Ms. Ritter does not point to any evidence that shows error at step three; the ALJ's findings were well within the zone of choice. See *Doc. 12 at 6.* Additionally, the ALJ, while not explicitly considering Listing 12.05, evaluated the 12.05(B) criteria elsewhere in the decision and found that Ms. Ritter had no more than moderate limitations in those areas. *Tr. 35-36.* The ALJ adequately explained how she considered the entire record, including Ms. Ritter's own reports of deficits in intellectual functioning, in finding that Ms. Ritter was not disabled.

### 3. Dr. Roer's Medical Opinion

Finally, Ms. Ritter contends that the ALJ did not properly evaluate Dr. Roer's medical opinion,[9] which I previously discussed. The ALJ found Dr. Roer's opinion unpersuasive because it was not supported or consistent with the balance of the medical evidence. *Tr. 41*. As explained above, that finding is supported by the record. The ALJ's conclusion was further supported by Dr. Roer's failure to review any medical records and Ms. Ritter's suggestion to her doctors that she had schizophrenia, with no objective findings or diagnoses to back up that suspicion. *Tr. 40-41, 72, 1757-1763*. Indeed, Ms. Ritter's subjective complaints of intellectual disorder were outsized compared to Dr. Roer's medical findings and narrative summary. *Id*. Ms. Ritter also improved with conservative therapies and psychotropic medication, and she could perform various daily activities. The ALJ properly characterized Dr. Roer's opinion.

---

[9] On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." See 20 C.F.R. § 404.1520c(a)-(c), 416.920c(a-c) (2017). Instead, ALJs must focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. See *Austin v. Kijakazi*, 52 F.4th 723, 728-30 (8th Cir. 2022); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul*, No. 1:19-CV-00034-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

## VI. Conclusion

The record did not suggest that low intellectual functioning significantly impacted Ms. Ritter's ability to perform workplace activities. The ALJ's decision was supported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Court affirm the decision and enter judgment in favor of the Commissioner.

Dated 10 February 2025.

_____
UNITED STATES MAGISTRATE JUDGE